UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TYSON JAMES WADE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 4:24-cv-00803-SRC |
| OFFICER UNKNOWN HAMM, | ) ) ) |
| Defendant. | ) ) |

**Memorandum and Order**

Tyson James Wade, an inmate at Fulton Reception and Diagnostic Center, sued St. Ann, Missouri Police "Officer Hamm #168" for civil-rights violations. Doc. 1 at 1;[1] *see* doc. 7. The Court granted Wade's application to proceed *in forma pauperis*, doc. 6 at 2; *see* docs. 2–3, and Wade paid his initial partial filing fee. After reviewing Wade's complaint, the Court dismisses his official-capacity claim against Hamm. The Court also directs the Clerk of Court to effect service of process on Hamm in his individual capacity. Further, Wade filed a motion for appointment of counsel, doc. 5, which having reviewed it, the Court denies the motion.

**I.      Background**

Wade filed this action on a Prisoner Civil Rights Complaint form pursuant to 42 U.S.C. § 1983. Doc. 1. He alleged the following facts. On September 8, 2022, as Wade exited a vehicle in his driveway, Hamm "suddenly pulled [him] from the vehicle" and "yelled 'you have warrants for your arrest.'" *Id.* at 5. Then Hamm "threw [Wade] up against the vehicle," "gave [him] a hard knee to [his] lower back," "hit [him] in the back of [his] neck," and "again shoved [him] back against the vehicle[.]" *Id.* Wade inquired what he did wrong and stated that he "did

---

[1] The Court cites to page numbers as assigned by CM/ECF.

not have any warrants"; nevertheless, Hamm "gave [Wade] a hard knee to [his] rib-cage [sic]," causing Hamm to "loose [sic] his footing and slip and fall" to the ground. *Id.*

When Hamm got up, he "grabbed . . . his Taser" and "suddenly struck [Wade] in the lower back," causing him to fall "to the ground." *Id.* Hamm then handcuffed Wade and "kicked [him] in the face very hard," knocking him "semi unconsious [sic]." *Id.* As Wade lay "face down on the road," Hamm "got on [Wade's] back and punched [him] in [his] head and face[,] knocking out [his] front[]tooth" that had also "cut through [his] upper lip." *Id.* at 4–5. Hamm "stomped on [Wade's] hand as well." *Id.* at 4. All the while, Wade alleged, bystanders watched on and "screamed at" Hamm. *Id.* at 5. When Wade woke up, he "was in [the] St. Depaul [sic] Emergency Room." *Id.* at 4. After, he "was admitted to the Intensive Care Unit with fluid on [his] brain." *Id.*

As a result of Hamm's conduct, Wade alleged he "now suffer[s] nerve damage in [his] lip," along with "numbness and tingling." *Id.* His "right hand has numbness and tingling also." *Id.* The doctors pulled "a couple damaged teeth[] in the back of [his] mouth," and his "front tooth is broken in half." *Id.* Wade has "scars on [his] face, arms, hands[,] and legs." *Id.* He now "suffer[s] High Anxiety around officers," "jump[s] to loud bangs, and get[s] bad migrain[e]s/headaches." *Id.* Wade also "suffer[s] memory loss." *Id.* Also, "[t]wo weeks after th[e] incident," Wade alleged, "Hamm then mailed [Wade] two traffic tickets." *Id.*

Wade sues Hamm for excessive force in both his official and individual capacities. *Id.* at 2, 7. For relief, Wade seeks "$10 million in actual damages and $1 million in punitive damages." *Id.* at 7. He also requests "full payment of all medical bills pertaining to" Hamm's use of "excessive force." *Id.*

2

## II.     Standard

Under 28 U.S.C. § 1915(e)(2), the Court court may dismiss a complaint filed *in forma pauperis* if the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

To sufficiently state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A plaintiff must demonstrate a plausible claim for relief, which requires more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). To determine whether a complaint states a plausible claim for relief, the Court must engage in "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). In doing so, the Court must "accept as true the facts alleged, but not legal conclusions." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678).

When reviewing a self-represented person's complaint under section 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984) (per curiam), and liberally construes the complaint, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). A "liberal construction" means that, if the Court can discern "the essence of an allegation," the "[C]ourt should construe the complaint in a way that permits" the Court to consider the claim within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364

3

F.3d 912, 914 (8th Cir. 2004)). Even so, self-represented plaintiffs must allege facts that, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). The Court need not assume unalleged facts. *Stone*, 364 F.3d at 914–15 (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff). Nor must it interpret procedural rules to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

**III.   Discussion**

Wade sues Hamm in both his official and individual capacities. Doc. 1 at 2. The Court addresses each claim in turn.

    **A.   Official-capacity claim**

Section 1983 "does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). Further, "[a] suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). In other words, when a plaintiff brings an official-capacity claim, the claim is actually "against the governmental entity itself." *White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017) (quoting *Brockinton v. City of Sherwood*, 503 F.3d 667, 674 (8th Cir. 2007)); *see also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that an official-capacity suit against a sheriff and his deputy "must be treated as a suit against the County" (quoting *Liebe v. Norton*, 157 F.3d 574, 578 (8th Cir. 1998)).

Here, Wade's official-capacity claim against Hamm constitutes a claim against Hamm's employer—the City of St. Ann, Missouri. *See Brewington*, 902 F.3d at 800. Liability for the

4

City under section 1983 attaches only if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*, 883 F.3d 1075, 1079 (8th Cir. 2018) (quoting *Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016)); *see also Marsh v. Phelps Cnty.*, 902 F.3d 745, 751 (8th Cir. 2018). But Wade does not allege that an official municipal policy, unofficial custom, or deliberately-indifferent failure to train or supervise gave rise to his injuries. *See* doc. 1. For that reason, Wade failed to state an official-capacity claim. Therefore, the Court dismisses Wade's official-capacity claim against Hamm.

### B.   Individual-capacity claim

"The Fourth Amendment protects citizens from being seized through excessive force by law enforcement officers." *Thompson v. City of Monticello*, 894 F.3d 993, 998 (8th Cir. 2018) (quoting *Mettler v. Whitledge*, 165 F.3d 1197, 1202 (8th Cir. 1999)). Excessive-force claims under the Fourth Amendment can "arise[] in the context of an arrest or investigatory stop of a free citizen[.]" *Wilson v. Spain*, 209 F.3d 713, 715 (8th Cir. 2000) (first alteration in original) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)). Because Wade was not detained or an incarcerated prisoner at the time of the alleged incident, *see* doc. 1 at 2, 4–5, the Court analyzes Wade's excessive-force claim under the Fourth Amendment, *see, e.g.*, *Graham*, 490 U.S. at 394; *Shelton v. Stevens*, 964 F.3d 747, 750–52 (8th Cir. 2020) (analyzing the plaintiff's excessive-force claim, resulting from injuries sustained during his arrest, under the Fourth Amendment).

"When evaluating a Fourth Amendment excessive[-]force claim under [section] 1983," a court must "consider 'whether the amount of force used was objectively reasonable under the particular circumstances.'" *Kohorst v. Smith*, 968 F.3d 871, 876 (8th Cir. 2020) (quoting

5

*Michael v. Trevena*, 899 F.3d 528, 532 (8th Cir. 2018)). "This evaluation" requires that a court must carefully consider "the case's particular facts and circumstances, including: '(1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* (quoting *Michael*, 899 F.3d at 532).

Courts "may also consider the result of the use of force." *Id.* (citing *Crumley v. City of St. Paul*, 324 F.3d 1003, 1007 (8th Cir. 2003)). Moreover, the Eighth Circuit has "held time and again that, if a person is not suspected of a serious crime, is not threatening anyone, and is neither fleeing nor resisting arrest, then it is unreasonable for an officer to use more than *de minimis* force against [the person]." *Watkins v. City of St. Louis*, 102 F.4th 947, 952 (8th Cir. 2024) (alternation in original) (quoting *Mitchell v. Kirchmeier*, 28 F.4th 888, 898 (8th Cir. 2022)).

Here, Wade plausibly alleged sufficient facts that Hamm used excessive physical force against him on September 8, 2022. After pulling Wade from a vehicle in his driveway, allegedly because he "ha[d] warrants for [his] arrest, Hamm "threw [Wade] up against the vehicle," "gave [him] a hard knee to [his] lower back," "hit [him] in the back of [his] neck," and "again shoved [him] back against the vehicle[.]" Doc. 1 at 5. Hamm then "gave [Wade] a hard knee to [his] rib-cage [sic]," and after Hamm regained his footing, he tased Wade "in the lower back," causing Hamm to "fall to the ground." *Id.*

After handcuffing him, Hamm "kicked [Wade] in the face very hard," knocking him "semi unconsious [sic]." *Id.* As Wade lay "face down on the road," Hamm then "got on [Wade's] back and punched [him] in [his] head and face[,] knocking out [his] front[]tooth" and cutting "through [his] upper lip." *Id.* at 4–5. Hamm also "stomped on [Wade's] hand." *Id.* at 4.

6

Wade does not allege that, at any point, he resisted arrest, responded with violence, or obtained any sort of weapon. *See id.* at 4–5. Nor does he allege that the incident resulted in Hamm arresting him or taking him into custody. *Id.*

Liberally construing these allegations, *see Estelle*, 429 U.S. at 106, the Court finds that Wade asserted enough facts to survive section 1915 initial review. Because Wade's "pleadings d[o] not support" that "the force used against [him] was objectively reasonable," his "Fourth Amendment excessive[-]force claim should survive" initial review. *Watkins*, 102 F.4th at 952 (citation omitted); *see also Michael*, 899 F.3d at 532–33.

### IV.    Motion to appoint counsel

Wade moves for the appointment of counsel. Doc. 5. In civil cases, a self-represented litigant does not have a "constitutional or statutory right to appointed counsel." *Ward v. Smith*, 721 F.3d 940, 942 (8th Cir. 2013) (citation omitted); *see also Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998) ("A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." (citation omitted)). Rather, a district court may appoint counsel "if convinced that an indigent plaintiff has stated a non-frivolous claim," *Patterson v. Kelley*, 902 F.3d 845, 850 (8th Cir. 2018) (citation omitted), and where "the nature of the litigation is such that plaintiff as well as the court will benefit from the assistance of counsel," *id.* (quoting *Johnson v. Williams*, 788 F.2d 1319, 1322 (8th Cir. 1986)).

When determining whether to appoint counsel, a court considers relevant factors, such as "the factual complexity of the issues, the ability of the indigent person to investigate the facts, the existence of conflicting testimony, the ability of the indigent person to present the claims, and the complexity of the legal arguments." *Phillips v. Jasper Cnty. Jail*, 437 F.3d 791, 794 (8th Cir. 2006) (citation omitted). Also, in a civil matter, the appointment of counsel for an

7

indigent plaintiff lies within the discretion of the Court. *Id.* (citing *Williams v. Carter*, 10 F.3d 563, 566 (8th Cir. 1993)).

Here, there is no indication that Wade cannot represent himself, and nothing in the complaint or in the record before the Court evidences sufficiently complex factual or legal issues. Moreover, the Court only now instructs the Clerk of Court to effect service of process on Hamm, and, to date, the Court has not issued a case-management order. For these reasons, the Court denies the motion for appointment of counsel without prejudice, and will entertain any future motions, if appropriate, as the case progresses.

**V.    Conclusion**

Accordingly, the Court dismisses Wade's official-capacity claim against Hamm brought pursuant to section 1983. The Court also directs the Clerk of Court to effect service of process on Hamm in his individual capacity. Additionally, the Court denies without prejudice Wade's [5] Motion to Appoint Counsel. A separate order of partial dismissal accompanies this Memorandum and Order.

So ordered this 17th day of March 2025.

STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE